# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 25-108V

|  |  |
|---|---|
| ELIZABETH FLORES,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br><br>Filed: May 7, 2026 |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Dorian Hurley, U.S. Department of Justice, Washington, DC, for Respondent.*

### **FACT RULING ON ONSET**[1]

On January 21, 2025, Elizabeth Flores filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on November 17, 2023. *See* Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.    Relevant Procedural History

Though the parties made a tentative effort to settle this claim, they were ultimately unsuccessful. ECF Nos. 13-15, 17-18. Respondent filed his Rule 4(c) Report on December 22, 2025, arguing that Petitioner's medical records do not preponderantly establish the alleged injury began within 48 hours of the subject vaccination, as required for a Table SIRVA claim. ECF No. 19 at 6 (internal citations omitted). Petitioner has not filed any documents in response. The issue of onset is ripe for resolution.

## II.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## III.    Relevant Factual Evidence

I make this finding of fact after a complete review of the record, including all medical records, declarations, and additional evidence filed, and in particular the following:[3]

- Petitioner received the subject flu vaccine in her left deltoid on November 17, 2023, at her local pharmacy. Ex. 1 at 3.

- Approximately 75 days post-vaccination (January 31, 2024), Petitioner saw an orthopedist reporting left shoulder pain. Ex. 3 at 25. In her intake questionnaire, Petitioner noted that she "[r]ecently received a flu vaccine on November 17 to [her] left shoulder and ever since then [she has] had pain and limited range of motion [("ROM")]." *Id.* at 43. She also reported that she had no problems with her shoulder "until November 2023 when she received the vaccine in the left upper arm." *Id.* at 25. Following an examination (showing positive impingement signs and some painful ROM), Petitioner was diagnosed with impingement syndrome and subacromial bursitis that "may be related to the vaccine as she had no problems with her shoulder prior to the vaccine administration." *Id.* at 26.

- During Petitioner's annual physical with her primary care provider ("PCP") that same day (January 31, 2024), Petitioner noted she had "L shoulder

---

[3] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

3

limited ROM since getting vaccine in November." Ex. 2 at 30. Petitioner continued that she saw an orthopedist that morning for "L shoulder pain post vaccine into [the] bursa in [the] Fall." *Id.* at 31.

- On April 1, 2024, Petitioner had an initial PT evaluation. Ex. 4 at 26. Petitioner complained of "L shoulder pain that started after receiving [a] flu shot in November."[4] *Id.* She also noted that "a month later she was still having pain." *Id.* Petitioner described the pain as being the worst during the first month and a half and rated it currently as a 3/10. *Id.* Despite findings on physical examination (including "[m]ild winging" of her left scapula, impingement signs, and mildly reduced ROM), Petitioner did not return to PT thereafter; she canceled all future appointments and was discharged from PT per her request on May 1, 2024. *Id.* at 17.

- While Petitioner had one orthopedic follow-up visit for left shoulder symptoms on May 16, 2024 (during which she received a steroid injection in the left shoulder, Ex. 3 at 11-12), Petitioner did not return to care thereafter for approximately six months – despite attending several visits for various unrelated ailments during that time. *See,* e.g., Ex. 2 at 8-10, 17-18; Ex. 7 at 8-10, 12, 17.

- Following a six-month gap in care for left shoulder symptoms, Petitioner returned to her orthopedist's office in mid-November 2024 to follow up on left shoulder pain. Ex. 6 at 11. Petitioner reiterated that her left shoulder pain "initially started following a flu shot." *Id.* She endorsed "good pain relief" following the last steroid injection but stated that the pain had not fully resolved. *Id.* A physical examination revealed equal ROM in both shoulders. *Id.* The treater thought that clinically, Petitioner did not have a major rotator cuff pathology and assessed Petitioner with shoulder impingement and pain, plus rotator cuff tendinitis. *Id.* at 12. Petitioner received a second steroid injection and was given an order for an at-home transcutaneous electrical nerve stimulation ("TENS") unit. *Id.*

- Petitioner filed a declaration (authored in January 2025), and explained in it that on the day she received the subject flu vaccine, "[a]s usual, that night[,] [her] arm was sore from the injection." Ex. 5 ¶ 3. Petitioner noted that as a nurse, she was aware that there may be soreness following vaccination for up to two weeks. *Id.* However, she recalled that after three to four weeks,

---

[4] I will note that on her PT intake form, when asked if this injury was related to occurrences at work or a car accident, for example, Petitioner noted that her injury was related to "Other Liability/Potential Lawsuit." *See* Ex. 4 at 34.

she was having difficulty sleeping on her side and had limited ROM in her left shoulder. *Id.* ¶ 4. By one-and-a-half months post vaccination, Petitioner stated that she still had "significant" pain and thus decided to make an appointment for care. *Id.* ¶ 5.

- No other medical record or declaration evidence regarding the onset of Petitioner's post-vaccination shoulder injury has been filed.

## IV.   Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset of pain within 48 hours of vaccination. 42 C.F.R. § 100.3(a)(XIV)(B); 42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria). As noted, Respondent contends that Petitioner cannot satisfy this Table criterion because she waited two and a half months post-vaccination to report pain. Rule 4(c) Report at 6 (internal citations omitted). More so, according to Respondent, Petitioner never placed the onset of her pain within forty-eight hours of vaccination when seeking care for her shoulder – instead only vaguely stating that her pain began after vaccination. *Id.* And, Respondent asserts that even in her declaration, Petitioner describes only typical post-vaccination soreness the night of her vaccination, and then significant pain arising between three and six weeks after vaccination. *Id.*

The totality of the evidence favors Petitioner's onset contentions. The aforementioned medical records establish that Petitioner consistently reported to treaters onset close-in-time to vaccination, that she sought treatment within just over two months of the vaccination, and that she indeed was experiencing symptoms in the relevant timeframe.

The fact that Petitioner delayed treatment for two to three months does not preclude Petitioner from establishing Table-consistent onset. In other cases, even *much greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.,* No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.,* No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). The delay here is not nearly as long.

In fact, some delay in seeking treatment itself is never *per se* evidence of a non-conforming onset. As I have previously noted, SIRVA petitioners often put off seeking

shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been (at least partially) the case here, with Petitioner explaining that she expected some soreness for a period of time post vaccination but that the pain did not subside, thus prompting her to seek care. Ex. 5 ¶¶ 3-5.

In addition, Petitioner affirmatively and repeatedly linked her shoulder pain to the subject flu vaccine – beginning with the January 31, 2024 treatment encounter, at which time she reported that she "[r]ecently received a flu vaccine on November 17 to [her] left shoulder and ever since then [she has] had pain and limited range of motion [("ROM")]." Ex. 3 at 43. Although this entry does not preponderantly support Table onset on its own, other subsequent medical records *consistently* corroborate this entry with similar detail and thus provide support for a two-day onset showing. *See,* e.g., *id.* at 25 (another entry from the same encounter explaining that her pain did not start "until November 2023 when she received the vaccine in the left upper arm."); Ex. 2 at 30 (an entry from Petitioner's PCP visit the same day describing "L shoulder limited ROM since getting vaccine in November."); Ex. 4 at 26 (an April 1, 2024 PT report of "L shoulder pain that started after receiving [a] flu shot in November."). The filed record fails to contain any contrary entries regarding onset. The contemporaneous medical records corroborate Petitioner's assertions and thus establish that the onset of her injury occurred within the timeframe required by the Table.

### Conclusion

Petitioner has provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination.

I encourage the parties to make a final re-attempt at informal resolution (of settlement or damages). **Respondent shall file, by no later than <u>Monday, June 08, 2026</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) Report or whether he is otherwise willing to entertain a renewed settlement demand from Petitioner.

In the event Respondent is open to informal resolution of either settlement or damages, and to aid in those discussions, the parties should keep in mind that the record supports a mild injury overall, requiring fairly conservative treatment for a limited duration. Petitioner participated in only one PT session, received two steroid injections, did not undergo surgery; and by November 2024 (just one year post vaccination), she had "equal ROM" (to the right shoulder) and had mostly ceased receiving *formal* treatment for her

left shoulder symptoms (with the exception of a February 2025 MRI and at-home care thereafter). *See,* e.g., Ex. 3 at 11-12; Ex. 4 at 17; Ex. 5 at 1-2. Petitioner should thus not expect more than a modest award, even at full value of this case.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master